UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LANCE BAYMON,                          CIVIL NO. 09-2032 (MJD/JSM)

      Petitioner,

v.                                   REPORT AND RECOMMENDATION

B.R. JETT, Warden,

      Respondent.

JANIE S. MAYERON, United States Magistrate Judge.

This matter is before the undersigned Magistrate Judge of the District Court on Petitioner Lance Baymon's application for habeas corpus relief under 28 U.S.C. § 2241. Petitioner claims the Federal Bureau of Prisons ("BOP") failed to give him credit toward his current federal prison sentence for certain prior jail time, and that as a result, he has been kept in prison beyond his proper release date. Respondent opposes the Petition claiming that Petitioner has been given all credit for past jail time that he is due.

The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court recommends that Petitioner's habeas corpus petition should be GRANTED in part, and four additional days credited against his federal sentence.

**I.    BACKGROUND**

Petitioner is incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). Declaration of Angela Buege ("Buege Decl."), ¶ 3 [Docket No. 8]. On February 3, 2006, Petitioner was sentenced in the Western District of Pennsylvania to 48 months imprisonment with three years supervised release for Possession of Fifteen or More Counterfeit or Unauthorized Access Devices in violation of 18 U.S.C.

§ 1029(a)(3). Buege Decl., ¶ 3; Attachment A (Public Information Data), p. 2. Petitioner has a projected release date of August 29, 2010, via good conduct time release. Buege Decl., ¶ 3; Attachment A, p. 3.

The facts bearing on the computation of Petitioner's jail credit are as follows.

On July 19, 2002, Petitioner committed the federal offense for which he is currently serving time. Buege Decl., ¶ 4; Attachment B (Judgment in a Criminal Case), p. 1. On July 30, 2003, Petitioner was arrested by state authorities in Chicago, Cook County, Illinois for the state offense of Unlawful Use of Credit Cards. Buege Decl., ¶ 5. The arrest resulted in the filing of Cook County Case Number 03-cr-1771901. Buege Decl., ¶ 5; Attachment C (Baymon's Incarceration History). Petitioner was released on bond from the Cook County Department of Corrections ("CCDOC") on August 7, 2003. Id.

On January 13, 2004, Petitioner was arrested by state authorities in Chicago based on a federal warrant for the instant case. Buege Decl., ¶ 6; Attachment D (Baymon's Criminal History Report), p. 2. Petitioner was released from federal custody on bond on January 14, 2004. Buege Decl., ¶ 6; Attachment E (United States Marshals Service Custody and Detention Report), p. 1. Petitioner voluntarily surrendered to federal authorities in the Western District of Pennsylvania on February 4, 2004, and was released via bond later that day. Buege Decl., ¶ 7; Attachment F (USMS Custody and Detention Report), pp. 1, 3.

On March 9, 2005, Petitioner was arrested by state authorities in Chicago, Cook County, Illinois for another state offense of Unlawful Use of Credit Cards (CCDOC Case Number 05-0019313). Buege Decl., ¶ 8; Attachment D, p. 2. Petitioner was placed in the custody of CCDOC on March 10, 2005. Buege Decl., ¶ 8; Attachment C, p. 01/01.

The court set bail on March 14, 2005 in the Cook County Case Number 03-cr-1771901, allowing Petitioner's release on bond. Buege Decl., ¶ 9; Attachment G (Certified Statement of Conviction/Disposition, Case Number 03-cr-1771901), p. 3. On March 31, 2005, Petitioner was released from custody of the CCDOC, via bond, and placed on electronic monitoring. Buege Decl., ¶ 9; Attachment H (CIMIS Standard Inquiry), p. 2.

On April 11, 2005, Petitioner failed to appear for a scheduled hearing in Cook County Case Number 03-cr-1771901. Buege Decl., ¶ 10; Attachment G, p. 3. The state court revoked his bond and issued an arrest warrant. Id. On April 18, 2005, the Federal Probation Office filed in the federal case a Petition requesting a warrant issue for the arrest of Petitioner and for the setting of a bond revocation hearing; on April 19, 2005, the federal arrest warrant was issued. Buege Decl., Attachment I, p. 5 at Docket No. 34.

According to Respondent, Petitioner was arrested on the state warrant by state authorities in Chicago on November 1, 2005. Buege Decl., ¶ 11; Attachment D, p. 2 (stating arresting authority was "CPD."[1]). On November 2, 2005, Petitioner was placed in the custody of the CCDOC on Case Number 05-0019313. Id. Further, on November 7, 2005, and while in custody of the CCDOC, Petitioner was arrested by state authorities on the charge of "Escape – Escape/Violate Electronic Monitoring." Buege Decl., Attachment D, p. 1 (stating arresting agency was "CCSPD"[2]).

Petitioner disagrees with Respondent's contention that he was arrested by state authorities on November 1, 2005. Instead, he claims he was arrested on November 1 (or November 7), 2005 in Aurora, Illinois by the United States Marshals on an

---

[1] "CPD" refers to Chicago Police Department.

[2] "CCSPD" refers to Cook County Sheriff's Police Department. See http://www.ccspd.org/

3

outstanding fugitive felony warrant for the Western District of Pennsylvania, and then the Marshals took him to a train station in Cook County, Illinois, where he was transferred to Chicago Illinois Detectives. See Petition, p. 5 [Docket No. 1]; Addendum to Response from Petitioner to Government's Response ("Addendum 1") [Doc. No. 29]; Letter dated September 13, 2009 to United States Marshal Service [Docket No. 30]; Addendum to Response from Petitioner to Government's Response ("Addendum 2") [Docket No. 32]; Statement of the Case [Docket No. 36]. Thereafter, Petitioner remained in state custody, except when he was released to appear in the federal case. See Buege Decl., Ex. G (Certified Statement of Conviction/Disposition, Case Number 03-cr-1771901).

On November 28, 2005, the United States District Court, Western District of Pennsylvania issued a writ of habeas corpus ad prosequendum for Petitioner's appearance in federal court on the federal charge. Buege Decl., ¶ 12; Attachment I (Criminal Docket, Case Number 2:03-cr-00222-AJS-1), pp. 6-7. Petitioner was transferred to federal custody pursuant to the writ on December 15, 2005. Buege Decl., ¶ 12; Attachment E, p. 1. On February 3, 2006, Petitioner was sentenced to 48 months imprisonment for Possession of Fifteen or More Counterfeit or Unauthorized Access Devices. Buege Decl., ¶ 13; Attachment B, p. 2. The Judgment & Commitment Order ("J&C Order") was silent on the relationship of the federal sentence and any state sentence yet to be imposed in the State of Illinois. Id. On March 4, 2006, Petitioner was returned to the custody of the state authorities in satisfaction of the terms of the federal writ of habeas corpus ad prosequendum. Buege Decl., ¶ 13; Attachment E, p. 2.

On October 11, 2006, Petitioner was sentenced in three state cases in the Circuit Court for Cook County, Illinois for a total term of eight years imprisonment for Misuse of Credit Cards and Escape/Violate Electronic Monitoring. Buege Decl., ¶ 14; Attachment J (Orders of Commitment and Sentence), pp. 1-3. The state judge recommended the Impact Incarceration Program ("IIP") for Petitioner.[3] Buege Decl., Attachment G (Certified Statement of Conviction/Disposition, Case Number 03-cr-1771901), p. 7; Attachment J (Orders of Commitment and Sentence). According to Respondent, the sentencing court gave Petitioner pretrial jail credit for 339 days, from November 2, 2005 to October 10, 2006, for Case Number 03-cr-1771901. Buege Decl., ¶ 14; Attachment K (Letter by John Biby dated August 18, 2000). Petitioner, however, claims he was not given credit for the time period of October 11, 2006 through December 26, 2006, when he was waiting in jail and the Dixon Springs boot camp prior to going to the DuQuoin Impact Incarceration Program. Petitioner Response to Government Response of Petition for Writ of Habeas Corpus ("Pet. Resp."), pp. 1-2 [Doc. No. 28].[4] On April 11, 2007, Petitioner was paroled on the state sentences and released to the custody of federal authorities. Buege Decl., ¶ 14; Attachment L (USMS Custody and Detention Report), p. 1.

Petitioner's federal sentence commenced on April 11, 2007, with prior custody credit granted for 36 days, calculated as follows: July 30-August 7, 2003 (date Petitioner was arrested by state authorities for the state offense of Unlawful Use of Credit Cards

---

[3] The Illinois Impact Incarceration Program is commonly referred to as "boot camp." See Solorzano-Patlan v. I.N.S., 207 F.3d 869, 871 (7th Cir. 2000). The state court sentencing judge similarly referred to it as boot camp in the Orders of Commitment and Sentence.

[4] Petitioner later clarified that he was seeking credit for the period of October 11, 2006 through December 12, 2006. See Statement of the Case [Doc. No. 36].

5

through the day Petitioner was released, via bond, from CCDOC, because this time was not credited towards his state sentence);[5] January 13-14, 2004 (date he was arrested by state authorities based on federal warrant to the date he was released from federal custody on bond); February 4, 2004 (date he voluntarily surrendered to federal authorities and was released on bond); March 9-31, 2005 (date of his state arrest for Unlawful Use of Credit Cards through date he was released from CCDOC and placed on electronic monitoring, because this time was not credited to his state sentence); and for November 1, 2005 (date he was arrested by state authorities based on state's warrant for arrest, because this time was not credited to his state sentence). Buege Decl., ¶ 15; Attachment M (Sentence Monitoring Computation Data Sheet dated August 24, 2009), p. 3. However, when the court in the Western District of Pennsylvania was solicited for his opinion as to whether a retroactive concurrent sentence designation would be appropriate, the court responded that he was not inclined to give Petitioner credit for the time he served in state custody, but would defer to the BOP to "ultimately determine under Title 18 U.S.C § 3621(b) and relevant case law, whether [Petitioner] should receive retroactive designation." Buege Decl., ¶¶ 18-19; Attachment P (Letter from United States District Court, Western District of Pennsylvania dated September 12, 2008).

The BOP has a three-part administrative remedy program to address federal inmate concerns about any aspect of confinement. Buege Decl., ¶ 21 (citing to Program Statement 1330.13, Administrative Remedy Program and 28 C.F.R. Part 542).

---

[5] Although not stated in the Declaration of Angela Buege, ¶ 15, Petitioner was given jail credit for July 30, 2003 through August 7, 2003, and this time period was included in the 36 days for which Petitioner was given credit against his federal sentence. See Buege Decl., Attachment M; Government Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Gov't Resp."), p. 16.

Petitioner exhausted his administrative remedies prior to commencing this suit. Buege Decl., ¶ 23, Attachment R (Baymon's Administrative Remedy Generalized Retrieval Data Form).

## II.  DISCUSSION

Initially, Petitioner contended he was arrested on November 1, 2005 by the United States Marshal Task Force and taken into federal custody on an outstanding fugitive felony warrant for the Western District of Pennsylvania. Petition, pp. 4-5, 13 [Docket No. 1]; see also Memorandum of Support Pursuant to 28 U.S.C. § 2241 ("Pet. Mem.") [Docket No. 2], p. 1-2. Thus, according to Petitioner, primary jurisdiction as of November 1, 2005 was with the federal government and the federal government never relinquished federal jurisdiction. Petition, p. 5; Pet. Mem., pp. 3-4. Additionally, Petitioner alleged that when he was sentenced in federal court, it was stated that he was in federal custody. Petition, p. 3. Thus, Petitioner asked for jail credit beginning November 1, 2005 through April 11, 2007. Id. at 5.

In support of his Petition, Petitioner argued that, despite the language of Title 18 U.S.C. § 3585, other courts have allowed jail credit where the state has also allowed credit against the same time. Petition, p. 15 (citing Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993); United States v. Benefield, 942 F.2d 60 (1st Cir. 1991)).[6] Petitioner also cited U.S. v. Cole, 395 F.3d 929, 931 (8th Cir. 2005) ("Cole I")[7] for the proposition that primary jurisdiction over a person is generally determined by who first arrests or obtains custody over the person; that primary jurisdiction continues until the first sovereign

---

[6] Neither Kayfez nor Gasele are applicable to the instant case – both involved concurrent state and federal sentences, and not consecutive sentences, as here.

[7] Cole I was vacated and reheard. See U.S. v. Cole, 395 F.3d 929 (8th Cir. 2005) vacated by 416 F.3d 894 (8th Cir. 2005) ("Cole II").

7

relinquishes its priority; and a sovereign can only relinquish primary jurisdiction in four ways: 1) release on bail; 2) dismissal of charge; 3) parole; or 4) expiration of sentence. Petition, p. 15.

In opposition, Respondent asserted Petitioner's sentence has been computed properly. First, Respondent contended a federal sentence generally commences when the defendant was received into the Attorney General's custody for service of the federal sentence. Govt. Resp., p. 13 (citing Reno v. Koray, 515 U.S. 50 (1995) (additional citations omitted). Respondent argued that Petitioner was arrested by state authorities on November 1, 2005, and was only "borrowed" on December 15, 2005 from the primary jurisdiction of the state by means of a writ of habeas corpus ad prosequendum on November 28, 2005. Id., p. 14. Thus, Respondent submitted that Petitioner received credit for time spent in federal custody pursuant to the federal writ on his state sentences, and it was not until he was released on April 11, 2007 to the custody of the federal authorities, following the parole on his state sentences, that the federal government obtained primary jurisdiction over Petitioner. Id. at 15.

Second, regarding presentence credit, Respondent asserted Congress has made clear that pursuant to 18 U.S.C. § 3585(b) that a defendant cannot receive double credit for presentence detention time. Govt. Resp., p. 15. Respondent argued that Petitioner received credit against his state sentences for the time spent in federal custody under a federal writ of habeas corpus ad prosequendum, and the State of Illinois did not relinquish its primary jurisdiction by complying with the writ. Respondent also maintained that the BOP properly determined under the relevant factors of 18 U.S.C.

§ 3621(b), and by soliciting the federal sentencing court's opinion, that a retroactive nunc pro tunc concurrent sentence designation was not appropriate.[8] Id. at 16.

Following receipt of the Government's response to his Petition, Petitioner filed a "Response" in which he asserted he had discovered that the time period of October 11, 2006 through December 26, 2006 had not been credited to his state or federal sentences. Petitioner Response to Government Response of Petition for Writ of Habeas Corpus ("Pet. Resp."), pp. 1-2 (citing Buege Decl., Attachment K) [Doc. No. 28]. Petitioner explained:

> According to Attachment K "Information provided by John Biby" of the Illinois Department of Corrections, Baymon was sentenced in Cook County Illinois, October 11, 2006 for a total of 8 years. Then, the second paragraph of Mr. Biby's letter states, "These three commitment orders also recommended the boot camp program for this inmate. On 12/12/06 the inmate entered the boot camp program at Dixon Springs. On 12/26/06 the inmate was transferred from Dixon Springs to DuQuoin IIP. On 4/11/07 the inmate graduated from the DuQuoin Impact Incarceration Program." Then, because his state sentenced [sic] had been served, Baymon was turned over to federal authorities on 4/11/07 to being [sic] his federal incarceration.

Id. Petitioner contended the state sentencing judge ordered him to serve his time at the DuQuoin Impact Incarceration Program, where he would be paroled upon completion, instead of serving eight years. Id., p. 2.

Additionally Petitioner maintained that "[t]he October 11, 2006 to December 26, 2006 time period was not time credited toward the Impact Program, and was not time credited toward his state sentence, because the state sentence was for the Impact

---

[8] BOP Program Statement 5160.05 provides that an inmate can request designation of a state facility for concurrent service of a federal sentence, a "nunc pro tunc" designation. Petitioner made this request, the BOP contacted the sentencing court for its opinion, and the court did not agree to give Petitioner retroactive designation. Govt. Resp. at 7-8 (citing Buege Decl., Attachment P).

Program. Baymon was waiting in jail for space to become available for him to enter the Impact Program." Id., 2. Believing that he was not actually serving his state sentence between October 11, 2006 and December 26, 2006, Petitioner argued that he should receive credit for this time against his federal sentence. Id.

Finally, in a letter and two addendums filed after his response, Petitioner asserted Respondent was incorrect in stating that he was arrested by state authorities on November 1, 2005. See Addendum 1 [Doc. No. 29]; Letter dated to September 13, 2009 to United States Marshal Service [Docket No. 30]; See Addendum 2 [Docket No. 32]. In these documents, Petitioner asserted he was arrested by a U.S. Marshal, and was turned over to a Chicago Officer. Id. Petitioner asked this Court to call the telephone number for the Office of the Secret Service provided by him, 312-XXX-XXXX, to confirm that it was the U.S. Marshals who went to an apartment located in Aurora, Illinois (and not in Chicago, Illinois) to confiscate a computer and a safe, and it was these agents who arrested him. See Addendum 2, p. 1. Based on these facts, Petitioner contended he was placed under federal jurisdiction on November 1, 2005, and the federal government did not relinquish primary jurisdiction to the state because none of the conditions described in Cole I – release on bail, dismissal of charge, parole, or expiration of sentence – were satisfied. See Addendum 1, p. 2; Addendum 2, p. 2.

In light of Petitioner's claim that he should receive credit for the period from October 11 through December 26, 2006 against his federal sentence, (Pet. Response), this Court issued an order directing Petitioner to clarify the time period for which he was seeking credit on his federal sentence [Docket No. 35.] In response to this request, Petitioner stated he was seeking jail time credit for both the periods of November 7,

2005 through April 11, 2007, <u>and</u> October 12, 2006 and December 12, 2006.[9] Statement of the Case [Doc. No. 36].

With respect to the period from November 7, 2005 through April 11, 2007, Petitioner explained:

> [I] was arrested on November 7, 2005 in Aurora, IL., by Federal U.S. Marshalls, in Kane County, IL. The U.S. Marshalls took me to a train station in Cook County, IL, where I was transferred to Chicago Illinois Detectives.

<u>Id.</u>, p. 1.[10] Maintaining that it was the U.S. Marshals who arrested him, Petitioner again argued that he was under the jurisdiction of the federal government and that jurisdiction never changed. <u>Id.</u>, pp. 1-2.

As for the period between October 12, 2006 and December 12, 2006, Petitioner indicated that he was seeking credit for this time because he had not received credit for it against his state sentences, as indicated by John Biby in Attachment K to the Buege Declaration. <u>Id.</u> at 2.

### A. <u>Credit for Time Served Between November 1, 2005 through April 10, 2007</u>

A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is a proper means for challenging the BOP's computation of jail credit. <u>U.S. v. Tinsdale</u>, 455 F.3d 885, 888 (8th Cir. 2006). In this case, a federal sentence was imposed on February 3, 2006, and service of that sentence began on April 11, 2007. State sentences were imposed on October 11, 2006, and were served from that date through April 10, 2007. Multiple terms of imprisonment imposed at different times run consecutively, unless the court

---

[9] Petitioner abandoned his request that he receive credit through December 26, 2009, when he entered the IIP.

[10] Petitioner noted that Attachment D to the Buege Declaration indicated that the "Chicago Police Department redacted the arrest address and residence." Statement of the Case, p. 1

orders that the terms are to run concurrently. 18 U.S.C. § 3584(a). In Petitioner's case, the J&C Order in the federal case was silent as to whether the sentence was to be consecutive or concurrent with other sentences. Buege Decl., ¶ 13, Attachment B. When contacted and asked whether he intended Petitioner's federal and state sentences to be concurrent, the federal sentencing judge indicated he was not inclined to give Petitioner credit for his state sentences, but would defer to the BOP to make this decision. Buege Decl., ¶ 18, Attachment P. Thus, Petitioner's federal sentence ran consecutively to his state sentences.

Computation of a federal sentence is governed by 18 U.S.C. § 3585.

> A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

BOP Program Statement 5880.28 provides:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

Program Statement 5880.28 at 1-12.[11]

The BOP policy "applies the common law doctrine regarding priority of custody which was adopted to provide an orderly method to prosecute an individual who has violated the law of more than one sovereign." See Robinson v. Owens, C.A. No. 4:07-

---

[11] http://www.bop.gov/policy/progstat/5880_028.pdf

3118-HMH-TER, 2008 WL 783782, at *8 (D.S.C. Mar. 20, 2008) (quoting BOP Program Statement 5880.28).

The doctrine of priority of custody was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). The purpose of the doctrine was to promote comity, mutual assistance and orderly procedure between sovereigns. Id. at 259. The Court stated, "[t]he chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." Id. at 260.

Thus, if Petitioner was under exclusive federal jurisdiction when his federal sentence was imposed on February 3, 2006, presumably the BOP would have found that his federal sentence commenced on that date. See Sisemore v. Outlaw, No. 09-3468, 2010 WL 364351 at *1 (8th Cir. Feb. 3, 2010) (per curiam) (citing Coloma v. Holder, 445 F.3d 1282, 1283-84 (11th Cir. 2006) for proposition that federal sentence cannot commence prior to date it is pronounced) (per curiam)); Mathison v. Morrison, Civil File No. 06-3496 JMR/AJB, 2007 WL 3224671, at *4 (D.Minn. Nov. 1, 2007) (concluding Petitioner's sentence could not have begun to run any earlier than the date on which it was imposed).

However, when state and federal sovereigns exercise jurisdiction over the same person during the same period of time, "primary jurisdiction is generally determined by which one first obtains custody of, or arrests the person." Cole II, 416 F.3d at 897 (quoting Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir.1991)). That said, a "sovereign with priority may elect to relinquish its priority to another sovereign."

Robinson, 2008 WL 783782 at *8 (quoting U.S. v. Cole, 416 F.3d 894, 897 (8th Cir. 2005); United States v. Warren, 610 F.2d 680, 684-85 (9th Cir.1980)). Relinquishment of priority generally occurs in one of the following ways: 1) release on bail; 2) dismissal of charges; 3) parole; or 4) expiration of sentence. Cole II, 416 F.3d at 897. But these four means are not the only way relinquishment of primary jurisdiction occurs.

> A sovereign may also relinquish primary jurisdiction when it surrenders a prisoner to another sovereign for trial, sentencing, and execution of the sentence, but such relinquishment does not extinguish the surrendering sovereign's right to the prisoner's return to its custody for trial. DeLong v. United States, 474 F.2d 719, 720 (5th Cir.1973) (per curiam). Additionally, a state sovereign may relinquish or waive primary jurisdiction by delivering the prisoner "into federal custody for the purpose of beginning his federal sentence." See Trowell, 135 Fed. App'x at 594. <u>Release from actual physical custody is the primary component of every relinquishment of priority of jurisdiction.</u> Without relinquishing its priority, a sovereign may loan a defendant in its custody to another sovereign for criminal proceedings in the receiving jurisdiction by way of a writ of habeas corpus ad prosequendum. Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir.1980). Such loan results in only a temporary loss of jurisdiction. Id.

Robinson, 2008 WL 783782 at *9 (emphasis added); see also Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994) (federal sentence does not commence upon issuance of a writ of habeas corpus ad prosequendum; the issuance of the writ merely changes the location of custody).

"The controlling factor in determining the power to proceed as between two contesting sovereigns is the actual physical custody of the accused." Cole II, 416 F.3d at 897 (quoting United States v. Vann, 207 F.Supp. 108, 111 (E.D.N.Y.1962)). See also Ziegler v. Sanders, No. 2:05CV00164 JWC, 2006 WL 2365719, at *3 (E.D. Ark. Aug. 14, 2006) ("The controlling factor is "actual physical custody" of the accused.") (quoting Cole II, 416 F.3d at 897)).

Here, the dispute is over who had primary jurisdiction over Petitioner in early November 2005. Petitioner first contended he was arrested by a U.S. Marshal on November 1, 2005, but later stated he was arrested by a U.S. Marshal on November 7, 2005. Petitioner argued because none of the four Cole factors took place, the federal government maintained primary jurisdiction (and therefore custody) over him until expiration of his state sentences. Respondent asserted Petitioner was arrested by state authorities on November 1, 2005, and was only later loaned to federal court pursuant to a writ of habeas corpus ad prosequendum.

Prior to November 1, 2005, Petitioner was in and out of state and federal custody. He had last been in state custody, but was released on bond on March 31, 2005, thus ending primary jurisdiction of the state. See Cole II, 416 F.3d at 897 (primary jurisdiction ends when defendant is released on bail). Respondent submitted Petitioner's Criminal History Report, which indicated he was arrested by a Chicago police officer on a state warrant on November 1, 2005. Buege Decl., Attachment D, at 2. This same report indicated that Petitioner was arrested by an officer of the Cook County Sheriff's Police Department on November 7, 2005. Id. at 1.

In opposition, Petitioner submitted to the Court a letter he sent to the U.S. Marshals Service seeking confirmation that he was arrested by a U.S. Marshal on November 1, 2005 at 9:00 a.m. on a federal warrant, however Petitioner never submitted any such confirmation to the Court. What the record before the Court does reflect is that the District Court for the Western District of Pennsylvania had issued an arrest warrant on April 19, 2005, at the request of the Federal Probation Office, but there is no indication in the federal docket that the warrant was ever executed, a bond revocation hearing ever took place, or that Petitioner's release in the federal case had

been revoked. Buege Decl., Attachment I, pp. 5-9. Thus, no evidence exists in the record to support Petitioner's claim that he was arrested by U.S. Marshals on November 1 (or 7), 2005.

The Court cannot conduct its own discovery in this matter to determine whether Petitioner was arrested by a U.S. Marshal on November 1 or 7, 2005. See Grant v. McGill, No. 3:06CV1063 RNC DFM, 2006 WL 2666087, at *1 (D.Conn. Sept. 14, 2006) ("The court impartially adjudicates cases. It does not conduct discovery.") On the record before the Court, Respondent has established that Petitioner was arrested by and was in the custody of state authorities on November 1, 2005, and this state custody continued through expiration of his state sentences.

Nevertheless, even if Petitioner was arrested by a U.S. Marshal on November 1, 2005, this Court concludes that the federal authorities relinquished primary jurisdiction to the state when Petitioner was turned over to state authorities that same day.

In Robinson, supra, the petitioner argued that he was in federal custody because although he was jointly arrested by the state and federal authorities, the state relinquished its custody by not acting on the state charges for more than a year, and the federal government was the first sovereign to obtain a conviction. 2008 WL 783782 at *9. The court rejected this argument noting that the only evidence in the record was that the state authorities arrested the petitioner. Id. The court also stated that even if the United States had been the first arresting sovereign, it relinquished its priority when it allowed the petitioner to be incarcerated in state prison without a challenge to the state's jurisdiction. Id. (citation omitted). Additionally, the court noted that "when the petitioner was sentenced in the federal court on November 8, 2000, he was on loan to the federal authorities pursuant to a writ of habeas corpus ad prosequendum thereby

16

negating the conclusion that he was already in federal custody beginning on the date of his arrest on May 22, 2000. Such a writ would have been unnecessary." Id.

Like Robinson, the only evidence in the record is that Petitioner was arrested by state authorities on November 1, 2005, and again on November 7, 2005. However, even if it was the U.S. Marshals, and not Chicago officers, who first arrested Petitioner, the conduct of the state and federal authorities refutes any suggestion that primary jurisdiction remained with the United States. See Anez v. Sherman, Civil Action No. 06-254 Erie, 2007 WL 4454744, at *3 (W.D. Pa. Dec. 17, 2007). Accepting Petitioner's version of his arrest, the U.S. Marshals immediately turned over his physical custody to the state and then allowed him to be incarcerated in state prison without challenging the state's jurisdiction. Furthermore, as in Robinson, by issuing a writ of habeas corpus ad prosequendum to "borrow" custody for federal proceedings against Petitioner, the United States conceded state priority of jurisdiction. See Sanders v. Federal Bureau of Prisons, No. 7:09CV00026, 2009 WL 1917093 at *4 (W.D.Va. June 30, 2009) (even if federal arrest qualified as triggering event for an exchange of primary jurisdiction from state to federal authorities, the federal court voluntarily relinquished the superior jurisdictional right by issuing the writ of habeas corpus ad prosequendum); Anez, 2007 WL 4454744 at *3 (W.D. Pa. Dec. 17, 2007) ("Since the determination of priority of custody is a matter resolved by the state and federal executive branches, the manner in which they handled Petitioner is evidence as to which sovereign had primary custody over him.").

In summary, the evidence in the record is that Petitioner was arrested by state authorities on November 1, 2005, and the state did not relinquish priority jurisdiction by loaning Petitioner to federal authorities for prosecution. Petitioner was received into the

17

Attorney General's custody for service of his federal sentence on April 11, 2007, and the BOP correctly determined that his federal sentence commenced on that date. Even if, as Petitioner contends, he was arrested by federal authorities on November 1, 2005 (or November 7, 2005), and was turned over to state authorities later that day, the federal government relinquished its priority of jurisdiction by returning actual physical custody of Petitioner to state authorities, by issuing the writ of habeas corpus ad prosequendum for his appearance in federal court, and by not contesting his incarceration in state prison. For all these reasons, this Court finds that Petitioner is not entitled to credit for time served from November 1 or 7, 2005 through April 10, 2007.

### B. Petitioner Was Not Granted All Prior Jail Credit He Was Entitled to Against His Federal Sentence

18 U.S.C. § 3585(b) provides:

> A defendant shall be given prior credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

A defendant cannot receive double credit for his detention time. U.S. v. Wilson, 503 U.S. 329, 337 (1992).

Petitioner was given credit against his federal sentence for all the time he had served related to the state and federal convictions and which had not already been credited against his state sentences for the dates between July 30, 2003 through November 1, 2005. This amounted to a total of 36 days credit. Petitioner was

sentenced by the state court on October 11, 2006, and he was granted 339 days pretrial jail credit, from November 2, 2005 to October 10, 2006 (the day before he began to serve his state sentences). According to this Court's calculation, there are 343 days from November 2, 2005 through October 10, 2006. But Petitioner was credited only 339 days against his state sentences. Thus, Petitioner was actually only given pretrial credit for November 2, 2005 through October 6, 2006 against his state sentences. Petitioner should have been credited an additional four days, from October 7, 2006 through October 10, 2006, against his federal sentence.

As to Petitioner's assertion that he should have received credit from October 11, 2006 to December 12, 2006, Petitioner argued that his state sentences only included those days when he was in the Dixon Springs boot camp and the DuQuoin IIP, and any other days in state custody after his sentencing, and prior to his entry into the Dixon Springs boot camp and the IIP, should be credited against his federal sentence. It is true that the state sentencing judge recommended that Petitioner enter the IIP program, and, as a result of completing this program, Petitioner was released before serving the entirety of his state sentences. See Wittmer v. Peters, 904 F.Supp. 845, 848 (C.D.Ill. Aug. 31, 1995) (describing similar Illinois "Impact Incarceration Program"). However, Petitioner's eligibility to participate the IIP, with the possibility of early release, was only a recommendation by the sentencing judge, not an actual reduction of his sentence. See 730 ILCS 5/5-8-1.1(a) ("the court may in its sentencing order approve the offender for placement in the impact incarceration program <u>conditioned upon his acceptance</u> by the [Illinois] Department [of Corrections]) (emphasis added). The time Petitioner spent in jail and the Dixon Springs boot camp prior to entering the DuQuoin IIP was part of his

eight-year state sentence, and time that could not be credited against his federal sentence.

In sum, the Court finds that Petitioner's federal sentence commenced on April 11, 2007, and Petitioner is entitled to four additional days of pretrial credit that were not credited against his state sentence, from October 7, 2006 through October 10, 2006.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be GRANTED in part, and Petitioner be credited an additional four days of pretrial credit against his federal sentence.

Dated:   February 11, 2010

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 25, 2010, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.